We'll hear argument next in case number 20-17-72. A.M. v. French. Mr. Warner. Thank you, Your Honor. May it please the Court. I'm Jake Warner here on behalf of Plaintiff's Appellant. A.H. is a high school senior who seeks to enroll in Vermont's dual enrollment program to better prepare for college. But unlike all her same district friends in public schools, home schools, and private secular schools, A.H. cannot access program benefits solely because she attends a religious high school. Such status-based discrimination violates free exercise. Once Vermont allows private secular school students to access program benefits, it must also allow private religious school students to access those same benefits on equal terms. The U.S. Supreme Court affirmed this principle as recently as this past summer in Espinoza, as did a panel of the appellate injunction earlier in this case. This court should do the same. Three critical facts highlight the agency's religious discrimination. First, when A.H. applied for program benefits, she was expressly denied because, quote, Rice is a religious school. Second, agency statements support this religious discrimination. For example, in 2018, an agency official flatly said that... Excuse me. This is Judge Winter. Where does that quote come from? It comes from record page JA139. And that statement says... By whom? It comes from a local government official. And that official said that A.H. was denied because she attends, quote, a religious high school. Is an official responsible for the decision? Of course, Your Honor. The agency has tried to blame local school officials for its discrimination, but in reality, the buck stops with the agency. It runs the dual enrollment program and is responsible for any discrimination in its administration. And I think an example... But what's the quote? What's the quote from a decision maker? Well, it was... The quote is from a local government official, and the program has mandated an individualized assessment in which these local school officials make decisions that affect program eligibility. And I think an example might bear this out, Your Honor. Take the federal real ID requirement for air travel. Imagine that the federal government made a state ID card the only acceptable form of real ID. But the federal government allowed individual states to set criteria for obtaining that ID. Now, suppose one state barred people of a certain race from getting those IDs. There's simply no way that the federal government could enforce the ID requirement as to affected travelers from that state just because it may constitutionally apply that same requirement to travelers elsewhere. The agency here can't apply the program's public funding requirement to bar or burden only religious school students. And that's consistent with this court's case, Comer v. Cisneros, where it says that officials violate civil rights if they know about unlawful discrimination and can intervene but do nothing. And here, Your Honor, the discrimination... The secretary should have known the criteria that the districts were using to make public funding decisions and is responsible for those decisions. I mean, is there evidence in the record that the secretary was aware of those criteria and approved them or ignored them? Certainly, Your Honor, and there's two reasons for that. One, certainly the secretary is presumed to know about Vermont Supreme Court precedent that mandates an individualized assessment about these public tuition decisions. But also, the agency itself has made countless statements that religious school students cannot access public tuition funds, and those statements are found in record sites 358 to 370. Yeah, the agency said that a number of times, but it's not clear that those statements are the views of the school district, is it? Your Honor, the school district has to follow Vermont Supreme Court precedent, which mandates an individualized assessment, and that's a problem with this program. When A.H. applied for programs... Well, the Vermont Supreme Court decision in Chittenden Town doesn't actually mandate an individualized assessment. It just says there need to be adequate safeguards in place, but that could have been a state-level uniform solution. It doesn't say, like, the Vermont Supreme Court didn't say there needed to be an individualized assessment by school districts, did it? And, Your Honor, I think that highlights a facial problem with the law. There's no evidence that the state has actually created those requirements, essentially operates as a religious status bar against religious school students. But here, if you look at the facts of the case, A.H. applied for program benefits, and when she went through the same process that all of her friends down the street in public schools, private secular schools, and homeschools went through, she faced an unconstitutional bar or burden that no other student faces, and that is religious status discrimination. The U.S. Supreme Court... Well, the state is telling us that what's really going on here is, in fact, that the school districts are making individualized assessments about whether there are adequate safeguards in place, and to the extent that they write emails that say that nonsectarian... that sectarian schools are not eligible, that was the sort of sloppy way of articulating the standard. Can I ask you if, in fact, they are doing individualized assessment about adequate safeguards, is that permissible? Is that constitutional? No, Your Honor. The very problem itself is that these officials have discretion to bar and burden only religious school students, and that is a feature of the dual enrollment program. The very fact that government officials only have discretion to bar or burden religious school students is an unconstitutional feature and violates free exercise. The very fact is that no facts in this record showed that religious school students have ever accessed the dual enrollment program, even though thousands of other types of students have applied... There is evidence that a number of religious schools qualified for the town tuition program, right? Well, for town tuition, Your Honor, but under the agency's best evidence, religious school students made up less than 0.3 percent of all students who receive public tuition funds. Couple that with the fact that no facts in this record suggest that any of these or other religious school students have ever accessed the dual enrollment program. Your Honor, that is a... Counselor, why don't you draw a distinction here, and correct me if I'm wrong, why don't you draw a distinction here between sending districts and non-sending districts, and that this is a non-sending district, and this is a sending district, excuse me, a non-sending district. The non-sending districts, it's possible for a religious student, a student of a religious high school, to qualify for the program. Isn't that correct? But where you have a sending district, that's never happened, and that can't happen because they're never... they're not eligible for public funding. Am I correct on that? No, Your Honor. The public funding requirement, and certainly this too concerns only religious school students in sending districts, and as applied, the public funding requirement in the dual enrollment program operates as a religious test. I understand that. I'm asking a friendly question. You haven't mentioned the difference between sending and non-sending districts here, but I think I read through all of your statements as you were making the arguments that you were qualifying this, your arguments to sending districts. Yes, this appeal is limited to only students in sending districts, and what's clear is that the evidence shows that only religious school students are barred and burdened from program benefits in that specific location, and that is exactly what this appeal is about, and Espinoza said that once the state has allowed private secular school students to access the public benefit, it must then allow similarly situated religious school students to access that same benefit on equal terms, and if the court has no further questions... Okay, I follow that. Can I ask... I do have a question, which is, so in Trinity Lutheran and religious uses of funds from its funding decisions, and so sometimes in the record here, it seems like districts are deciding whether a school has mandatory chapel services or something like that. Why can't we read those things in the record as the district's deciding whether the tuition dollars or the public funds are ultimately going to support religious worship directly, and that's the determination they're making, and that's permissible under the Supreme Court's cases. Well, that principle comes from Locke, Your Honor, and Locke is irrelevant here because no funds go to religious high schools as part of the dual enrollment program. All the dual enrollment program funds go to colleges and universities, and that highlights a very interesting distinction about this program. The state would bar religious school students from accessing dual enrollment, but on the back end, it would allow a public secular school student to ask, and the state has admitted that in papers below, so that highlights that the state has no legitimate interest in barring and burdening religious school students as it does in this program. You're saying that the public funding requirement is merely an eligibility requirement. It actually has nothing to do with funding of the DEP. Is that what you're saying? Precisely, Your Honor. Are you saying it's in effect an arbitrary rule? That is exactly what I'm saying, Your Honor. That public funding requirement operates as nothing more than a religious test in sending districts, and that is why the program is unconstitutional as applied to A.H. What about the town tuition program? So if the town tuition program could, I mean, you say you're not challenging the town tuition program. Does that mean that you think it's admissible for the town tuition program to exclude religious schools in sending districts? Not at all, Your Honor. We do believe that there is a problem with the town tuition program. In fact, we have filed a separate lawsuit challenging that program, but on this appeal, we've limited our argument, or at least focused our argument on the as-applied challenge because the lower court had confused much of our facial arguments which touched on that program. Well, if it were permissible for the state to exclude religious schools from the town tuition program, why couldn't the dual enrollment program piggyback on what schools are publicly funded? The problem is that the public funding requirement operates as a religious test as applied in the dual enrollment program. Certainly, we think there are many facial problems with the town tuition program. The fact that it mandates an individualized assessment that bars and burdens religious school students, the fact that it mandates a religious inquiry into religious schools, the fact that the purpose and effect of the program intends it seems to bar religious school students, but when you bring all of that into the dual enrollment program when no money goes to religious high schools, that's an unconstitutional feature of the dual enrollment program. And unless the court has any further... Do my colleagues have any other questions before we move on? No. Okay. Thank you, Mr. Warner. We'll hear now from the government. Ms. Murray. Thank you, Your Honor. May it please the court. Claire Murray on behalf of the United States. The government really just has three points in this appeal. First, this is an as-applied appeal. So regardless of whether there is any noise in the record about the broader facial challenge, the motions panel correctly granted this day as applied to A.H. because she was clearly discriminated against based on the religious character of her school in violation of the free exercise clause. Second, A.H.'s injury is traceable to and redressable by the state of Vermont and Secretary French because it is Vermont state law that imposes structural burdens on students who attend religious private schools and not on students who attend secular private schools from sending districts. Finally, Vermont's unequal treatment cannot pass muster under strict scrutiny. Turning first to A.H.'s as-applied challenge, the free exercise clause prohibits the state from discriminating on the basis of religious status and doling out educational benefits. But that's exactly what happened to A.H. here. Her district denied her request for tuition to her local Catholic school because it was, quote, a religious school. The district court found that her application had been denied and for that reason. And based on that denial alone, she was ineligible for the dual enrollment program and could not, after this court's say, take science classes at a secular Vermont university. Even though state dual enrollment funds flow to the Catholic high school, eliminating any potential youth issues or compelled support issues. And that's a textbook Espinoza violation. There's no wrong defendant problem in this case. Can I ask about this distinction between as-applied and spatial? I mean, there's not a contention that there's something about A.H. that means a generally applicable rule can't be applied to her. Isn't the claim just that the public funding requirement is religiously discriminatory and is therefore unconstitutional? Well, I think the point with respect to her is that we know that her claim was denied because her school was religious. Whereas, with respect to other students, as the state has said, it may be more the question of whether there was a burden put on them, right? Was a burden put on them to, as the district court said, convince their districts that they should be allowed to put safeguards in or that it was feasible and constitutional to put safeguards in. And that is, so with respect to A.H., you don't have the structural issue she was discriminated against. With respect to the broader scope, you have this structural burden that Vermont state law puts on the students. And they do that in two ways. So first, a combination of the statute governing town tuition and the Vermont Constitution, as interpreted in Chittenden Town, imposes this sort of structural disadvantage on students from funding districts who enroll in private religious schools. And that, at least, is aimed at getting... So the state is saying that actually what's going on in all of these cases, including A.H.'s one, is that the individualized determination about adequate safeguards. And you've just described that as a burden on religious schools. So I guess my question is, if that's in fact what the state is doing, is that not also unconstitutional? Yes, exactly. I mean, it's an individual assessment that does not apply to students from secular private schools and does apply to students from secular, excuse me, to students from secular private schools, but does apply to  assessment. It's an individual assessment. You know, it's not looking at the merits of the student. It's looking at whether the student has, and the district together, have undertaken the onus and worked together with the school to sort of thread this constitutional and logistical needle to put in place safeguards that, for the reasons plaintiffs sort of outline, are going to be very tricky in terms of entanglement issues. And that's the kind of burden that not only, you know, it takes time and effort and sort of moxie on the district to check on whether or not they can get that tuition. There's nothing in state law that compels the district to work with students to put in place safeguards, and, you know, and that's why, you know, when it sounds like it sounds like the government's position is that even if what was going on was an individualized assessment to put in place safeguards, that would also be a burden on religion and would be unconstitutional. Is that right? At least the imposition of this burden, right? The Trinity Lutheran talks in terms of the inability to compete on an equal footing in the bidding process for a contract or grant. Not just whether you get the grant, but whether you're competing on an equal footing. And the burdens that are placed here on these students for the dual enrollment program that have no offset in terms of, you know, potential youth issues or potential compelled support issues, and not placed on secular students, is something that triggers strict scrutiny. And the state has not even... In the town tuition program, are there potential youth issues? In the town tuition program, there are potential youth issues, right? Because there is some talk about chapel, and paying for altars, and paying for religious education. There are sort of lock issues. Now, the town tuition program is not an issue in this case. The United States has not taken a position on the constitutionality of the restrictions on the town tuition program. But those problems fall away entirely, right, in the context of the dual enrollment program. Because then, there, all of the funds go to colleges. And in A.H.'s case, to the University of Vermont for science classes. So there's really no... To authorize a religious school to participate in the dual enrollment program, is the state not providing some kind of a benefit to the religious school? And if it were permissible to put safeguards on benefits that go to religious schools, why wouldn't they be allowed to put safeguards on it? Because even if there is some benefit in the form of sort of their imprimatur, or showing that they don't, you know, they're not against the school, there's no direct financial support. The money flows from the state and from the state funds being used to fund worship, or to fund religious education, or to fund, you know, the training of ministers, the kinds of things you see in lock. Councilor, to a separate question, and this is just a question of record, you may have the answer to it. To what extent have local districts put in safeguards or not? My understanding from the record is that there have not been safeguards put in. So we actually have a 20-year practice since Chittenden of no safeguards being put in. And therefore, it's in effect a de facto prohibition on public funding. So we certainly know, I apologize, we certainly know that the state has not put in place safeguards. So that's what Chittenden Town envisions at 563 is that the state will put in safeguards and change the current statutory system, which they've not done. The record, my understanding is the record is not yet complete, discovery is ongoing. And so we don't know to what extent safeguards have been put in place. We know that there are 22 different religious schools that have received funding. We don't know if those are because the sending districts did not know about Chittenden Town. We don't know if it's because they put in place safeguards. I think the record is just not yet complete on that. Have all of these schools that have received funding, the religious schools that have received funding from non-sending districts? These are all from sending districts. From sending districts, that's right. So districts that don't have public schools of their own. And the only evidence we have in the record there is one spreadsheet and one interrogatory that shows funding going from districts that are sending districts to these religious schools. We don't know why. And the state says, and there's no reason to question this, that the districts are not required to report that information to the state. I would assume that that would, you know, in further discovery, that that would be the case. Does it matter in this case that the evidence we have about A.H. being rejected on the basis of religious status happened after the suit commenced and after she had applied for a plenary injunction? I mean, that application and rejection occurred after the application for the motion that we're considering. I don't think so. And that's because she was applying for tuition reimbursement. There's no question, you know, the district court doesn't question this. The state, as far as I know, does not question this, that her application was in some way untimely. It appears to have been that you would always apply ex post. Now, it's true that her school applied for the dual enrollment program in an untimely way, but the district court made a factual finding that that was irrelevant because it would have been denied anyway because they were not receiving state tuition. So I don't think there's a timeliness issue. Now, she did not appeal, but there's no, as far as we know, as far as we can tell, there is no state administrative exhaustion. It would be denied anyway because they were not receiving tuition, but it sounds like since you're not taking a position on the town tuition program, that maybe it would have been denied tuition for a permissible reason. I'm sorry, I'm not sure I follow. So the dual enrollment program does not distinguish between permissible and impermissible denials, right? All it says is if you as a district... No, no, no, that's right. That's right. I understand. But since you're not taking a position on the town tuition program, let's say the town tuition program, let's assume for the moment that it is using some permissible criteria. There's all sorts of things that follow after a state makes the decision to provide public funding. You're saying that the state would have an obligation to scrutinize every one of them to see if it puts an extra burden on religious schools. Why can't the state, if it's a permissible restriction not to provide tuition to a religious school, rely on that initial decision? Because on your hypothetical, Judge Manasseh, the town tuition program is okay, not because it doesn't discriminate, but because it satisfies strict scrutiny, right? Because it has a compelling reason, which is complying with its compelled support or the establishment clause or use or whatever the reason is. And so for the dual enrollment program to peg eligibility to that same discriminatory system, it would also have to satisfy strict scrutiny. And here it just doesn't, right? I mean, they sort of posit three potential interests that could be advanced, and none of them are really advanced, at least in a narrowly tailored way. So avoiding compelled support of religion is not advanced at all, because the funds go straight to the secular school. You know, opportunities for underprivileged children, there's a kind of, there's a mismatch there in terms of over-inclusiveness, under-inclusiveness. If you're a scholarship student, at a religious school, you're not eligible. So the district and the state is making a determination that is either a ban on sectarian schools or some kind of inquiry about adequate safeguards, and you have to judge that against the government interest in administering the town tuition program on the one hand, or in this case, the interest in administering the dual enrollment program. But the initial criteria are the same in both cases, right? The initial criteria are the same, but even if there is, and we haven't taken a position on this, a compelling interest supporting the disparate treatment in the context of town tuition, there's not in the context of dual enrollment. Okay. All right. If my colleagues don't have further questions, let's hear from the appellee, Mr. Alexander. Good morning, and may it please the court, John Alexander for the appellee, Secretary Daniel French. The district court order denying appellant's motion for preliminary injunction should be affirmed. The Vermont dual enrollment statute establishes a public educational program in which the state of Vermont pays for high school students to take two college classes at state expense, and the student receives both college and high school credit. As a public educational program, the dual enrollment program is open to students who are already members of the publicly funded educational system. So this includes students at public high schools, as well as students at private high schools, provided that their private high school tuition is already publicly funded by the local school district in which they live. It is this publicly funded tuition requirement of the Vermont dual enrollment statute that appellants contend constitutes religious discrimination as applied to appellant age. The most important question presented by this appeal is whether the purpose or object of the dual enrollment publicly funded tuition requirement was intended or it was religious discrimination. This appeal, as the government and appellants confirm, is not about assessing the constitutionality of Vermont's town tuition program or whether the Vermont Constitution's compelled support clause can be reconciled with the free exercise clause. The district court correctly concluded that the dual enrollment statute's publicly funded eligibility requirement for private high school students is a valid religion neutral law of general applicability that does not appear to give rise to Well, can I ask how is it neutral? So the public funding requirement, it seems to me, based on the record, either what's going on is the districts are deciding that religious schools just can't participate as a categorical matter or they're applying some kind of test as to whether the school is so pervasively sectarian that adequate safeguards can't be applied. But in either one of those cases the government is making an inquiry specifically about the religious status of the school, isn't it? Well, any inquiry that is being done is being done by local school districts, not the Agency of Education. As a matter of Vermont's statutory law, local districts' tuition funding decisions are reserved to local school districts subject to a right of administrative review appeal by the Right, you're piggybacking on those decisions, but surely you'd agree with what opposing counsel said, which is that if a school district were making funding decisions based on race or something, the state would not be able to just say, oh well, we're going to rely on their determinations in deciding who gets to participate in the dual enrollment program, or would you? No, I wouldn't because, to bring it back to the fact of this case, if there is any religious discrimination being carried out at the local level by school districts, the state of Vermont is ready to address that in the form of administrative review by the State Board of Education, and no party in this case has ever contended that that administrative appeal process is in any way constitutionally inadequate. So as to any implication that the Vermont Agency of Education is Right, but I understand, but the distinction they're making is that this isn't actually a challenge to the town's tuition program, right? So it's undisputed that the Secretary of Education makes the certification for participation in the dual enrollment program, right? That is correct, yes. And the only inquiry that is made on that So if, in fact, the public funding requirement were being, like public funds were being given out on a race-based basis or an explicitly religion-based basis, it's true someone could appeal to the State Board of Education with respect to the town tuition program, but if they wanted to tell the Secretary of Education not to rely on that criterion for purposes of making certifications in the dual enrollment program, wouldn't that be redressed by the Secretary of Education who makes those certifications? Well, the only inquiry made by the Agency of Education with regard to private schools seeking dual enrollment participation is whether or not their private school tuition is publicly funded. The Agency of Education does not ask or inquire whether the tuition could have or should have been publicly funded in conformity with the Vermont Constitution or should have been passed. Those are determinations made by the You just said a moment ago that if, in fact, school districts were giving out funding on the basis of race or something else that's explicitly discriminatory, you couldn't just say, oh, well, that's their determination and we're going to rely on that criterion for purposes of participation in dual enrollment. Would you? I mean, would you say if you knew that the districts were saying only white students in sending districts get public funding, then you'd say, well, okay, we can use that determination to determine who gets to Well, based on that hypothetical, if local districts were engaged in express or explicit racial discrimination, then that would be a violation of law and certainly there would be the power by the state of Vermont to address and remediate that discrimination. But here, with regard to... Right, so the question here is whether this actually is religiously discriminatory, right? It's not, like, what part of the government makes the determination. Well, right, because we would, obviously, it's been established that the Town Tuition Program and the Compelled Support Clause of the Vermont Constitution are not the subject of this case or this appeal. That's a different case that was recently filed by Appellants A.H. and the Diocese, but if I were to look at the Town Tuition Program and the Vermont Constitution's restrictions placed on the public funding of religious worship, that is not inconsistent with federal free-exercise jurisprudence, including Espinoza and Lockheed Davy. Lockheed Davy established that the government need not fund essentially religious endeavors such as devotional... Is that right? So in Lockheed Davy, Davy couldn't get funding to go to a particular degree program, but the court said, you know, he still can get funding to attend religious schools and receive a religious education. But in the record here, it sounds like, I mean, we have this email from Mr. French in 2015 where he's deciding whether a school should qualify for public funding, and he says, if it's pervasively sectarian, meaning that it has, it's affiliated with a sect and has sectarian activities and requires participation in chapel or something, then it's just ineligible for public funding. Isn't that an evaluation of the character of the institution? There's no attempt to say, well, you could attend the institution, but we're going to avoid paying for the fraction of it that goes to chapel services. Well, that statement by Secretary French was made by him when he was a local school superintendent, and I think it has to be said that that statement reflects an incomplete understanding of what the Vermont Constitution requires, and what indeed the Free Exercise Clause requires as well. The discrimination solely based on religious status or religious character is inconsistent with the Free Exercise Clause, but at the same time, discrimination based on religious status is in no way required by the Vermont Constitution. What the Vermont Supreme Court said in its Taylor v. Town of Cabot decision in 2017 is that the Vermont Constitution only prevents government funding for religious worship, or in the functional equivalence there too, in a school setting. So that is in no way inconsistent. Well, the Vermont Supreme Court said in town, it said religious worship, but then it said that religious education is a form of religious worship, didn't it? Or like, religious education is the same thing as religious worship. Yeah, religious education or instruction in religious dogma or tenets. In other words, instruction that is designed to induce... Isn't the presumption of the Supreme Court in Espinoza, when it said that the state doesn't have the same interest in excluding religious education from public funding that it does in excluding the education of ministers, isn't the Supreme Court implicitly saying that you can't make that equivalence between religious education and religious worship? Well, I'm not sure I read it that way. I think that in Espinoza, in the majority opinion, it described the Lockheed Davies holding as standing for the idea that government need not fund an essentially religious endeavor, such as devotional theology degrees or instruction designed to induce religious faith, and I don't think even in Espinoza that was meant to be an exclusive list. So if there is a historic and important state interest in not financially subsidizing the training or financial support of clergy, it would seem that there is an equally historic and substantial state interest in not funding religious worship or religious instruction designed to induce faith. And so, again, we're getting a bit far afield because we are— Can I ask a separate question, which is, I agree with you that if you read Chittenden Town, the Vermont Supreme Court was focused on religious activities and seemed to draw a distinction between, you know, students in religious schools as an institution and particular activities, like religious worship or religious education. But as I look at the record in this case, it seems that the way that this adequate safeguards test is being applied by school districts is in one of two ways. Either the districts are excluding religious institutions as a categorical matter, or they're doing some version of what Mr. French did in 2015 and evaluating whether the school is pervasively sectarian, which again seems to be about the religious status of the school. So even if Vermont law allows for some focus on uses and not on status, if the record suggests that the way it's being operationalized is based on status, isn't that a problem? Well, we don't have a clear picture in the record before as to how exactly the Chittenden Town holding is being operationalized at the local district level. The only specific example in the record before this court of a local district denying tuition funding to a religious school student is the example of the Grand Isle School District and their denial of tuition reimbursement for the age. And so the statement made by the email from the school superintendent that's in the record, I'm not sure if that's the complete rationale, but if standing alone it is a bit troubling in terms of suggesting discrimination based on religious status, but that is not imputed upon the Agency of Education or the state of Vermont in general because the state of Vermont stands ready to address that religious discrimination in review by the state's Board of Education. And in this case, the appellant, A.H., did not pursue that. You just said it was troubling, so if the secretary who makes a certification for the dual enrollment program knows that the only reason that A.H. is not publicly funded as a student in the Ascending District is because of her religious status and they bring that to the secretary's attention, wouldn't the secretary be obliged not to use that as a reason to deny her participation in the dual enrollment program? Well, A.H. was denied... She's seeking an injunction against the secretary so that he doesn't apply the public funding requirements to her. And you just said that the public funding requirements seems to have excluded her because of her religious status. So isn't he obliged not to apply that to her because it was, it amounted to discrimination on the basis of religion? Well, no, I think... Excuse me. I believe what the record indicates is that appellant A.H. was denied participation in dual enrollment only because her sponsoring high school, Rice Memorial High School, did not submit a timely agreement. That is the only stated reason why A.H. is not in the dual enrollment program. Secondary to that, though, A.H., for a subsequent school year, would need to fulfill that publicly funded requirement. And the publicly funded requirement in and of itself is facially neutral as to religion and, perhaps more importantly, operates in a religiously neutral way. And that's the... You said it's neutral respect to religion, but we just had this long discussion about how when the school districts who apply the public funding requirement evaluate whether a school is public funds, they have to decide whether there's adequate safeguards, and that's an inquiry that's specific to religious schools. Not as if it's a generally applicable rule that, incidentally, excludes religion. They specifically look at each religious school that might get public funding, don't they? Well, I don't know what the local districts do. It may well be that local districts determine on their own that an adequate safeguard to prevent public funding for religious worship is simply having the religious school certify that we will not use any of these public funds to support our religious worship activities. That would not involve a government inquiry, even on the local level, into religious practice or worship. But really, the one... the most important fact in this appeal, and that is really never rebutted by the appellants, is that religious school students in Vermont regularly receive publicly funded tuition from their sending districts, and thereby satisfy the dual enrollment program's publicly funded eligibility requirement. That is a fact that has never been rebutted or controverted by the appellants or the government in this action. No, I get that. I get that, which is why I was asking you before about Mr. French's evaluation from 2015 about whether a school is pervasively sectarian. So if it is the case that students in sending districts who go to religious schools get public funding because the government decides that they are at a school that is not too pervasively sectarian, isn't that still a governmental evaluation of the religious status of the school? In your hypothetical, that could be something that the local district, a local school district which is a distinct legal entity that has the capacity to sue and be sued, that's a determination they're making, and that under the Vermont statutory structure, the Agency of Education, the defendant, the appellee in this case, has no legal authority to intervene and veto and countermand these local district decisions. I guess I have another question, which is in that correspondence from Mr. French in 2015, he's corresponding with the General Counsel of the Agency of Education, who replies by saying that if there were an administrative appeal arising out of a local district's tuition funding decision, that the agency would be advising the state board on what criteria to use with respect to whether the school qualifies for public funding. Isn't that evidence in the record that shows that the Agency of Education is in fact involved in administering these criteria about when schools are eligible or not for public funds? Well, I think that if there was an administrative appeal arising out of a local district's tuition funding decision to the State Board of Education, at this point, the district, the school board, State Board of Education would have its own independent legal counsel, given the role of the Agency of Education in this litigation. So I'm not sure that what may have been in 2015 will necessarily hold today. So, but the State Board of Education is an independent governmental body that makes its own decisions as to whether a tuition, local district's tuition funding denial decision is consistent with the federal and state law, and that simply shows that this is not an instance of the state of Vermont turning a blind eye to any localized discrimination by local school districts. Counselor, I have a question, if I could. Right now, it turns out that Rice receives no public funding, and my question is, would it be eligible for public funding under certain circumstances? Absolutely. Okay, but that's not the criteria that's used now for the DEP program, right? It's actual receipt of public funding, and there was a time, I think, and that eligibility for public funding was the status, was the rule not actual receipt. Am I incorrect on that, or is that right? I'm not sure that's correct. Since at least 2011, which was when Vermont passed its Act 58, that's an example of the policy goals of the dual enrollment program. That's the origin, that's the provenance of this statutory phrase, publicly funded requirement. That is, that's the first time that we see in Vermont statute this requirement. Right now, we're actually trying it to actual receipt of public funds, as opposed to just eligibility for public funds under other circumstances, correct? Right. Some portion of the private high school students' tuition to the private school, whether it be secular or religious, needs to be paid, publicly funded by the local district. So, I thought that somewhere I read in the papers that DEP at some point tied eligibility to, for the DEP program, to the schools were eligible for public funding, not to the students actually receiving public funding as a part of their tuition. Right, that's an argument made by DEP. If that's the case, why was that change made? I don't think that was the purpose of the change. Well, let me just finish. It would, in effect, have the ability of making it harder for students at religious schools to get the DEP qualifications, right? Well, as I said, I believe it is, it has always been a requirement of the statute at issue in this case that the tuition actually be publicly funded, and I'm not aware of any circumstance in the past where it was sufficient for the private school student to attend a private school that was merely eligible for public funding, because that would defeat the whole underlying purpose of the statutory scheme, which is that dual enrollment is a public educational program reserved for those students who are already members of a publicly funded educational system. What's the purpose of that requirement in the sending district? So, you keep saying the purpose is people who already get public funding, but if the reason that somebody's not getting public funding is the religious status of the school, what purpose does the requirement serve in the context of a dual enrollment program? Well, the general purposes of the publicly funded requirement, it appears from the relevant legislative history, is that it is related in some way by the Vermont legislature to this idea that by reserving dual enrollment eligibility to people who are already members of the publicly funded educational system in Vermont, that that serves the policy goal laid out in Act 58 to encourage better college attendance patterns by all students, but particularly by groups who are underrepresented in terms of college attendance, and this goes to the whole idea. I understand, but the statute for the dual enrollment program talks about three different types of districts, right? There are districts with a public school, there are districts that function as a public school, and then there are sending districts, and there's a separate standard there, and there it's anybody who is publicly funded at their independent school, and that doesn't have any kind of a tie to need, right? Everybody in a sending district is eligible for that subsidy to go to an independent school unless it seems they're either religious, or they go to a religious institution, or they go to a religious institution that is pervasively sectarian. So in sending districts, it's not really based on need, is it? And it might be based on religion. Well, I would take issue with that, Your Honor, in that if one looks at the actual language of the dual enrollment statute, the publicly funded tuition requirement applies to all private high school students, whether they attend a private secular or private religious high school, and whether or not they live in a sending or a non-sending district. That's an argument made by the appellants in their brief, that there is somehow in the language of the dual enrollment statute some distinction between sending and non-sending districts, and that's just not true. The publicly funded tuition requirement applies equally to students in sending and non-sending districts, and the operational effect of that, Your Honor, is that the vast... But don't you have to apply it a different way in each of the types of districts? So if you're in a school with a public school, that means you attend the public school. If you're in a school with a independent school that functions as a public school, it means you attend that school. And if you're in a sending district, it means you get public funding at whatever school you choose to attend. I mean, you can't apply it uniformly across those three types of districts, right? Because in sending districts, there just isn't a public school, so it doesn't make any sense to say somebody who attends the public school in that district. So it's got to be applied in a different way across the three types of school districts, doesn't it? Well, all I can say is that the publicly funded tuition requirement for private school students is the exact same and applied in exactly the same way, regardless of whether the private school student lives in a sending district or a non-sending district. There is simply no distinction made in the statute, and indeed there is no distinction made in the way that the Agency of Education applies that requirement. Indeed, there have been numerous instances documented in the non-sending district, that is a district that operates a public high school and attends a private secular high school, has reached out to Agency of Education and said, can I participate in the dual enrollment program? The answer uniformly has always been back, no, because you do not meet the publicly funded tuition requirement of the statute. So that is an instance where it demonstrates that under the Lukumi test, it really cannot be said that the falls exclusively or almost exclusively on religious school students. It's simply not true, as a matter of fact, and the appellants really do nothing to even dispute that. What the appellants are really trying to do is tell this court, this court really needs to ignore the operational effect of this statute, the publicly funded requirement, on the vast majority of private high school students in Vermont, whether they attend a secular or a religious high school. They're not going to do that. I get your argument. I guess I have one last question. I mean, you said before that you wouldn't ignore if districts were making like race-based classifications or something that was explicitly discriminatory. I mean, if in only sending districts, districts were using race-based criteria to decide who should get public funding, you wouldn't say that that discrimination could be other two types of districts, their non-discriminatory criteria, because anyone can attend the public school, would you? I mean, shouldn't we pay attention to what districts are doing when they have extra discretion? Well, no, I wouldn't make that argument in that case, race-based discrimination. All I can say is that in this case, if there are instances of religious discrimination going on at the local level, and it's by no means established how prevalent that is given the large numbers of students from semi districts that do have their tuition to religious schools funded, if that were indeed going on, Vermont statutory system provides that there is no legal authority by the Agency of Education to veto or countermand those local decisions. Rather, that is the function of the State Board of Education, and no one has ever said that that is in any way constitutionally inadequate or unfair. So I can't stress enough. I think I get the argument. Let me just ask if any of my questions. If none, then let's hear from Mr. Warner on rebuttal. Thank you, Your Honor. What's clear is that neutrality principles ensure that similarly situated students are protected from discriminatory treatment. That's exactly what we see here. A.H. cannot access program funds because she is a religious school student. All of her friends in public schools, private secular schools, and homeschools can access program benefits, but she can't for their own reasons because she attends a religious school. Well, not all of her friends, right? So if someone attends a private school in a district that has a public school, they also can participate in the dual enrollment program, right? Well, it goes to the fairness in the process, Your Honor. If that student goes through the process, that student will automatically get program benefits because there is no religious bar or barrier affecting that student. But when A.H. goes through that same process, it's exactly like what happened in Trinity Lutheran. A.H. received a categorical bar or a bar based on her religious status that no other student in her school district faces. So it's an unfairness built into the procedure in sending districts. And the counsel for the secretary just admitted that if local school officials made funding decisions based on race, the secretary would have to address that discrimination. The situation is no different when the discrimination is based on religion rather than race. And that's exactly what we see government officials doing here in sending districts. They're excluding religious school students from accessing program benefits. And in so doing, school officials are, whatever test they're applying, we know what the effect of that test is. As Judge Walker just said, that or, at the very least, mandate a sectarian inquiry under either situation that is unconstitutional under the free exercise clause. The bottom line is... I love this idea that the state board, that the state has a mechanism for redressing discrimination in the context of a public funding decision, which is you can take an appeal to the state board. And so A.H. should avail herself of that option instead of trying to make a kind of collateral attack on the funding decision by suing the secretary. Well, your honor, that administrative appeal may be an appropriate challenge in the town tuition context, but not here in dual enrollment, since the latter is controlled by the Secretary of Education. And, of course, when you bring a 1983 action, this court has said many times that the plaintiffs need not exhaust state remedies before doing so. The case is that A.H. deserves an equal opportunity at educational success, but the agency is declining to give A.H. that opportunity, solely because of her school's religious status. A.H. should not be singled out because of her faith, yet we see that's exactly what's happening here in this case. Unless this court has any further questions, I'll waive the balance of my rebuttal. Okay. Thank you, Mr. Warner. The case is submitted.